# UNITED STATES DISTRICT COURT
### for the
Eastern District of North Carolina

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| JOSHUA KWAME ASANE | ) | Case No.   5:20-MJ-1658-RN |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____December 1, 2016_____ in the county of _____Cumberland_____ in the _____Eastern_____ District of _____North Carolina_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1325(c); | Marriage Fraud |
| 18 U.S.C. § 1546(a) | Fraud and Misuse of Visas, Permits, and Other Documents |

This criminal complaint is based on these facts:

please see attached affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Bryan Moultis, Special Agent, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 over the telephone.

Date:   ___June 23, 2020___

_____
*Judge's signature*

City and state:   ___Raleigh, NC___

_Robert T. Numbers II, United States Magistrate Judge_
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

<u>AFFIDAVIT</u>

1.     I, Bryan T. Moultis (hereinafter "your affiant"), am a Special Agent (S/A) of the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have been employed over seven (7) years as a HSI S/A and have completed the DHS Federal Law Enforcement Training Center (FLETC), Criminal Investigator Training Program (CITP). I am currently assigned to the HSI Resident Agent in Charge Raleigh, North Carolina Field Office (HSI RAC/RA) and my duties include conducting criminal investigations for violations of Titles 8, 18, 19 and 21 of the United States Code, to include violations of immigration offenses, in conjunction with the Document Benefit Fraud Task Force ("DBFTF"), which investigates the manufacture and sale of fraudulent Form I-551 Immigration and Naturalization Resident Alien Cards, commonly known as green cards, as well as the fraudulent procurement of immigration benefits, such as permanent residence in the United States. Prior to my appointment as a HSI S/A, I was employed as civilian S/A with the Army Criminal Investigation Command, Major Procurement Fraud Unit, for a period of two years, where I performed sophisticated fraud and corruption investigations. Lastly, I am currently a Field Grade Commissioned Officer in the US Army Reserves at the rank of Major and am intricately familiar with matters relating to the US Army.

1

*GD*

2. This affidavit is made in support of a criminal complaint for Joshua Kwame Asane (herein after referred to as JOSHUA ASANE) for violations of Title 8 United States Code, Section 1325(c) – Marriage Fraud, and 18 USC 1546 – Fraud and Misuse of Visas, Permits, and Other Documents (herein after referred to as the SUBJECT OFFENSES) that have been committed by JOSHUA ASANE.

3. Because this affidavit is being submitted for the limited purpose of securing an arrest warrant, your affiant has set forth only those facts that your affiant believes are necessary to establish probable cause to believe that the SUBJECT OFFENSES occurred within the Eastern District of North Carolina and were perpetrated by JOSHUA ASANE.

<u>INVESTIGATION</u>

4. Beginning in or around April of 2019, Special Agents of Homeland Security Investigations (HSI), U.S. Army Criminal Investigation Division (CID), and U.S. Citizenship and Immigration Services, Fraud Detection and National Security (UUSCIS/FDNS), began conducting a criminal investigation into the activities of an organized group of U.S. Military Members (both active and separated), and foreign nationals primarily from Ghana, Nigeria and the United Kingdom engaging in fraudulent marriages in order for the soldiers to obtain Basic Allowance for Housing (BAH), and for the foreign nationals to obtain Lawful Permanent Residence (LPR), which they would not normally be entitled to.

5. A related grand jury investigation regarding the Organization began on

𝒢𝒟

October 17, 2019[1], and is continuing through the date of this affidavit to include a superseding indictment returned on April 21, 2020.[2]

6.      Between approximately May 15, 2019, and January 7, 2020, the government issued grand jury subpoenas to more than 10 individuals or entities seeking records relating to marital relationships and knowledge of fraudulent marriages taking place in Cumberland County, within the Eastern District of North Carolina, and elsewhere.

7.      The Investigation has focused on whether, during the period of approximately January 13, 2015, to the present, various individuals associated with the Organization have committed criminal offenses, including violations, of Title 18 United States Code, Sections 371 (conspiracy), 8 U.S.C. Section 1325(c) (marriage fraud), 18 U.S.C. Section 2 (aiding and abetting), 8 U.S.C. 1324(a)(1)(A)(iv) (harboring aliens), 18 U.S.C. 1546(a) (visa fraud), 18 U.S.C. 1015(a) (false statements relating to naturalization, citizenship, or alien registry), 18 U.S.C. Section 641 (theft of government property), and 18 U.S.C. 1512(c)(2) (tampering with a victim, witness or informant).

8.      On or about December 1, 2016, JOSHUA ASANE engaged in a civil marriage ceremony to A.D.B., a United States Citizen and active member of the U.S. Military in Cumberland County, North Carolina, within the Eastern District of North

---

[1] _See_ _Indictment Ebenezer Yeboah Asane, et. al. 5:19-CR-423 (1-4), Attached as Exhibit "A"_
[2] _See_ _Superseding Indictment Ebenezer Yeboah Asane, et. al. 5:19-CR-423 (1, 3-12), Attached as Exhibit "B"_

3

𝒢𝒟

Carolina.

9.    On or about December 29, 2016, JOSHUA ASANE, completed a Supplemental Information for Spouse Beneficiary Form (Form I-130A) to the United States Citizenship and Immigration Services (USCIS).  At the time he completed the form he stated under penalty of perjury that:

   a.  his name is Joshua Kwame Asane

   b.  his current address is XXX Petre Road, Chesapeake, Virginia, 23325

   c.  his previous address was 6632 Brookstone Lane, Apt 303, Fayetteville, North Carolina.

   d.  he was born in Breman Bedum, Ghana.

   e.  he is employed at Norfolk State University, Norfolk, VA

10.   On or about December 28, 2017, A.D.B. submitted a Petition for Alien Relative (Form I-130) on behalf of JOSHUA ASANE to USCIS.  On or about January 3, 2018, USCIS received the petition.

11.   At the time A.D.B. completed and submitted the I-130 Petition, A.D.B. stated the following:

   a.  She resided at 6632 Brookstone Lane, Apt. 303, Fayetteville, NC.

   b.  That she and JOSHUA ASANE were married in Cumberland County on December 1, 2016.

   c.  A.D.B. stated that she was employed by the U.S. Army, stationed

4

*GD*

at Fort Bragg, NC.

d. JOSHUA ASANE's physical address was 3154 Petre Road, Apt. 202, Chesapeake, VA.

e. That JOSHUA ASANE was previously married to Agyeiwaa Afriyie-Bediako, and stated they were divorced on March 3, 2016.

f. That JOSHUA ASANE has two children by Afriyie-Bediako, N.K.A., born XX-XX-2010, in Ghana, and J.K.A., born on XX-XX 2016, in Zambia.

g. That JOHSUA ASANE, last entered the U.S. on or about January 14, 2016, with a non-immigrant visitor visa, and was authorized to remain in the United States for a period not to exceed July 13, 2016.

h. In Part 4. "Information About Beneficiary" (JOSHUA ASANE) Question 59, asks…"If filling for your spouse, provide the last address at which you physically lived together. If you never lived together, type or print, **"Never lived together"** in Item Number 59.a. A.D.B. stated that she and JOSHUA ASANE physically lived together at 6632 Brookstone Lane, Apr. 303, Fayetteville, NC, from April 10, 2017 to present.

12. In support of the I-130 Petition the following documents were submitted with the Petition:

5

*GD*

a. Ghanaian Birth Certificate of JOSHUA ASANE

b. U.S. Birth Certificate of A.D.B.

c. Divorce Decree from Ghana between JOSHUA ASANE and Afriyie-Bediako.

d. U.S. Uniformed Service Identification Card in the name of JOSHUA ASANE issued March 9, 2017.

e. U.S. Military Identification Card in the name of A.D.B.

f. Letter of support written by T.E. (the mother of A.D.B.)

g. Staged photographs of JOSHUA ASANE and A.D.B.

h. Copy of Application, License and Certificate of Marriage between JOSHUA ASANE and A.D.B.

i. Letter of support submitted by Samuel M. Agyapong, attesting to the bono fides of the marital relationship between JOSHUA ASANE and A.D.B.[3]

j. Servicemembers' Group Life Insurance Election and Certificate of coverage, listing JOSHUA ASANE as the 100 percent beneficiary.[4]

k. Residential Lease Agreement, dated April 10, 2017, at the

---

[3] Samuel M. Agyapong is a defendant in *Superseding Indictment Ebenezer Yeboah Asane, et. al. 5:19-CR-423 (1, 3-12), Attached as Exhibit "B"*

[4] On or about February 5, 2018, A.D.B. changed the "primary" beneficiary to her mother (T.E.), and listed JOSHUA ASANE as the 'secondary"

6



Brookstone Apartment Community for the lease of apartment 303, located at 6632 Brookstone Lane, Fayetteville, NC, listing JOSHUA ASANE and A.D.B. as tenants.

13.     On or about December 29, 2017, JOSHUA ASANE concurrently submitted an Application to Register Permanent Residence or Adjust Status (Form I-485) with USCIS, based on the underlying I-130 Petition filed by his U.S. citizen spouse.

14.     On or about October 31, 2019, Ebenezer Yeboah Asane (the brother of JOSHUA ASANE) was arrested in the Northern District of Alabama (NDAL), based on the first indictment issued on October 17, 2019, in the Eastern District of North Carolina.

15.     On or about May 25, 2020, your affiant conducted a noncustodial, voluntary interview of A.D.B. who is an active member of the U.S. Military. A.D.B. was identified as being the spouse of JOSHUA ASANE and part of a marriage fraud conspiracy in Cumberland County, NC and elsewhere. As a result of the interview, A.D.B. stated the following:

    a.  A.D.B. was introduced to JOSHUA ASANE sometime in 2016, after she was approached by Ebenezer Asane who was introduced to her through a third party co-conspirator (hereinafter referred to as C.D.) that was also in the same military unit as A.D.B.

    b.  A.D.B. stated that Ebenezer Asane "pitched" her the idea of getting out

7

*GD*

of the barracks, by "doing the interview" (post marriage). After thinking about the offer and opportunity to get out of the barracks she told Ebenezer Asane that she would do it. Ebenezer Asane told A.D.B. that she would be getting married to his brother (JOSHUA ASANE).

c. A.D.B. and JOSHUA ASANE were married in December of 2016.

d. A.D.B. stated that the first time she met JOSHUA ASANE was on December 1, 2016, at the Cumberland County Court house parking lot the day they entered into the marriage. At that time Ebenezer Asane told A.D.B. to wear her military uniform, A.D.B. stated she did not know why at the time.

e. A.D.B. stated that she had never communicated with JOSHUA ASANE via telephone or text messages prior to the wedding.

f. A.D.B. stated that she was told by Ebenezer Asane that she would not have to have sex with JOSHUA ASANE. A.D.B. stated that she did not kiss JOSHUA ASANE at the conclusion of the wedding ceremony.

g. A.D.B. stated that Ebenezer Asane took photographs outside of the jail after the ceremony. A.D.B. stated she found out later that they were taken for the purpose of submitting with the Immigration paperwork.

h. A.D.B. stated that Ebenezer Asane printed out some immigration forms and showed them to A.D.B. Ebenezer Asane stated that they needed some time to go by (between the marriage ceremony and filing the

8

*GD*

immigration forms) to "make the marriage appear more authentic)."

i. A.D.B stated the she was contacted by Ebenezer Asane and directed to travel to his apartment in order to complete the immigration paperwork.

j. A.D.B. stated that She never communicated with JOSHUA ASANE and that Ebenezer Asane provided her a "questionnaire" (via email) while she was deployed and told her to memorize it.

k. Your affiant asked A.D.B. if she was the actual person to file the paperwork with USCIS or if someone else had completed it on her behalf. She stated at the time the paperwork was filed, she was on a tour to Korea. She stated JOSHUA ASANE would tell her what he was doing. Your affiant asked A.D.B. if JOSHUA ASANE had power of attorney to conduct business on her behalf, she stated "no."

l. A.D.B. was asked if she had been to JOSHUA ASANE's apartment in Virginia and what the address was. A.D.B. stated it was "3175" but could not recall the address. A.D.B. stated the only time she was at JOSHUA ASANE's apartment is the date that they were scheduled for the immigration interview with USCIS in Virginia.

m. A.D.B. stated that she was not involved in the completion or submission of the immigration paperwork. A.D.B. stated that Ebenezer Asane was interacting with JOSHUA ASANE throughout the process to complete the forms and submit them to USCIS.

9

*GD*

n. A.D.B. stated that Ebenezer Asane asked her to include JOSHUA ASANE on her lease, however A.D.B. did not want to. Instead she photo shopped JOSHUA ASANE's name and information into the lease, and then gave it to Ebenezer Asane for submission to USCIS.

16. On May 26, 2020, A.D.B. voluntarily completed a "Request for Withdrawal of Petition for Alien Relative," Pursuant to Title 8 CFR 103.2(b)(6), which stated…" I A.D.B. filed a Petition for Alien Relative, (I-130) on behalf of JOSHUA ASANE with the U.S. Citizenship and Immigration Services on or about or before January 3, 2018. I hereby request the withdrawal of that petition for the following reason:"… "The marriage is not legitimate. We've never engaged in sexual relations or any forms of intimacy. I married Joshua to receive BAH to move off post."

17. On or about May 26, 2020, A.D.B. recorded a telephone conversation between herself and C.D. In the telephone call, A.D.B. asked if C.D. remembered introducing her to the "African people." C.D. responded affirmatively and corroborated the information that was initially provided by A.D.B. to your affiant.

18. On or about June 2, 2020, your affiant provided a "ruse" subpoena to individual A.D.B. to make it appear that she was called to testify in a grand jury proceeding. A.D.B. provided a copy of the subpoena via text message to JOSHUA ASANE.

19. On or about June 2, 2020, A.D.B. recorded a telephone conversation between herself and JOSHUA ASANE regarding the "ruse" Grand Jury subpoena.

10

*GD*

During the conversation A.D.B. asked JOSHUA ASANE what she would say during questioning at a grand jury proceeding. A.D.B. asked JOSHUA ASANE, "I don't even know what your favorite color is." JOSHUA ASANE did not respond to the question and told A.D.B. "let me look at the subpoena, and I'll call you back."

20. On June 17, 2020, your affiant contacted A.D.B. to ensure she was okay and to check in. During that time, A.D.B. informed your affiant she had a recording of Ebenezer Asane who had called her about the "ruse" subpoena.

21. Your affiant has conducted a review of the recording and determined that the recording disclosed that Ebenezer Asane spoke at length about the case against him and coached A.D.B. on how to handle testifying pursuant to the grand jury subpoena – to include what A.D.B. should and should not say, including any potential questions regarding the marital relationship with JOSHUA ASANE.

22. A.D.B. asked if Ebenezer Asane talked to his brother (JOSHUA ASANE). Ebenezer Asane stated the day he came home; he called his brother who had informed him that A.D.B. was under suspicion. Ebenezer Asane wanted to talk to A.D.B. to ensure she was prepared to go before a Grand Jury and answer questions. Ebenezer Asane stated he was prepared to have others provide support. Ebenezer Asane stated to A.D.B. that she could tell investigators that she did not want to talk, but investigators would try to use a Grand Jury to force her to talk. Ebenezer Asane told A.D.B. to say "stuff" that make sense that nobody can say otherwise.

11

*GD*

23. A.D.B. expressed that she was worried that investigators had something that she was unaware and was worried about saying something in front of the Grand Jury that wasn't necessarily true. Ebenezer Asane asked A.D.B., "Ask yourself what they got." A.D.B. did not respond and Ebenezer Asane assured A.D.B. that they "didn't have shit" on her, so she should not worry. Ebenezer Asane stated if they ask you questions about your husband's brother, you guys did not talk about money exchanges or promises of any kind.

24. Ebenezer Asane also coached A.D.B. on how to answer questions about text communications through Ebenezer Asane to explain that she was merely using him to get to her husband so that the communication was easily explained away.

25. Ebenezer Asane told A.D.B. to keep his/her answers simple and short. Ebenezer Asane stated that they will ask A.D.B. if they (A.D.B. and JOSHUA ASANE) had "…sex after…after they got married, and all that…and you tell them yeah, we do it before and after...it doesn't even matter."

26. Ebenezer Asane asked A.D.B. if she has thought of how she was going to testify. A.D.B. stated she talked to JOSHUA ASANE and that he had said the same thing that Ebenezer Asane was telling her.

27. Ebenezer Asane concluded, stating to A.D.B. that he would prepare written questions for her that she could expect to be asked in the grand jury. Ebenezer Asane stated that he would send the written questions to A.D.B. so she could review them and they could go over the responses.

*GD*

## CONCLUSION

28.     Based on all of the foregoing, I, Bryan T. Moultis, believe that there is ample probable cause to conclude that Joshua Kwame Asane is in fact guilty of marriage fraud, in violation of Title 8 United States Code, Section 1325(c)), and visa fraud in violation of Title 18 United States Code, Section 1546(a), and respectfully ask that the Court issue a warrant ordering his arrest for such crimes.

Further, your Affiant sayeth not.

_____
Bryan Moultis
Special Agent
Homeland Security Investigations


Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this written affidavit. Dated: June 23, 2020

_____
Robert T. Numbers, II
United States Magistrate Judge

13

*GD*

FILED IN OPEN COURT
ON $\underline{10-17-19}$ Ben
Peter A. Moore, Jr., Clerk
US District Court
Eastern District of NC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CR-423-1FL (1)
NO. 5:19-CR-423-2FL (1)
NO 5:19-CR-423-3FL (1)
NO 5:19-CR-423-4FL (1)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **INDICTMENT** |
| | ) | |
| EBENEZER YEBOAH ASANE | ) | |
| a/k/a "Ben" | ) | |
| SAMUEL SIMON SRAHA | ) | |
| JAMES ERNEST EKOW ARTHUR | ) | |
| ERNEST ATTA GYASI | ) | |

## General Allegations

At all times relevant to this Indictment:

1. The Immigration and Nationality Act (INA) governs the immigration laws of the United States.

2. Pursuant to the INA, foreign-born nationals are not permitted to permanently reside in the United States unless they were lawful permanent residents.

3. Under the INA, a foreign-born national who is married to a United States citizen can obtain lawful permanent resident status in the United States if the marriage was entered into in good faith; and the United States citizen did not enter into the marriage in exchange for something of value, such as money; and the United

1

States citizen did not enter into the marriage for the purpose of enabling the foreign national to obtain legal permanent resident status in the United States.

4.    The United States Citizenship and Immigration Services (USCIS) is an agency of the United States Department of Homeland Security and is charged with processing applications for immigration benefits such as lawful permanent residence.

5.    A foreign-born national who is seeking to become a lawful permanent resident of the United States on the basis of marriage to a United States citizen is required to complete and submit to the USCIS an Application to Register Permanent Residence or Adjust Status (Form I-485). The foreign-born national is required to sign the Form I-485 certifying, under penalty of perjury, that the information provided by the foreign-born national, including information about the foreign-born national's spouse, is true and correct and that the foreign-born national is admissible to the United States pursuant to the INA.

6.    In order for a foreign-born national to obtain permanent resident status on the basis of marriage to a United States citizen, the United States citizen spouse is required to file a Petition for Alien Relative (Form I-130) on behalf of the foreign-born national. In the Form I-130, the spouse is required to certify that he or she is in fact a United States citizen, to provide certain background information about the marriage (such as the location of the marital residence) and to certify that the marriage was not entered into for purposes of evading immigration laws. Additionally, certain supporting documentation is also required to be submitted

Case 5:19-cr-00423-FL *SEALED*   Document 1   Filed 10/17/19   Page 2 of 14
Case 5:20-cr-00349-FL   Document 1   Filed 06/23/20   Page 16 of 60

contemporaneously with the Form I-130, to include, but not limited to, a copy of the marriage certificate, and Biographic Information (Form G-325).

7.      Upon receipt of the Form I-485 and the Form I-130, the USCIS begins an official proceeding to determine whether to grant the petition. A Report of Medical Examination and Vaccination Record (Form I-693) and an Affidavit of Support (Form I-864) on behalf of the foreign-born national are also required to be filed with the USCIS to ensure that the foreign-born national has no communicable diseases, and will not become a public charge in the United States.

8.      As part of the official proceeding, the USCIS conducts interviews with the foreign-born national and the United States citizen spouse in order to determine the validity of the claimed marriage.

9.      If a foreign-born national's application is approved by the USCIS, the foreign-born national is accorded "conditional" lawful permanent resident status for a period of two years. Generally, within 90 days of the two year anniversary of the issuance of conditional lawful permanent residence, the foreign-born national and United States citizen file a Petition to Remove Conditions on Residence (Form I-751) with the USCIS to remove the conditional status of the foreign-born national. The foreign-born national and the United States citizen must establish that the marriage was entered into in good faith. A marital interview is conducted at USCIS's discretion.

10.      If and when the Form I-751 is approved, the conditions of the foreign-born national's residence are removed, resulting in unconditional lawful permanent

3

residence status. This status authorizes the foreign-born national to permanently

reside and lawfully work in the United States.

11. For purposes of this conspiracy, there are three general roles that apply.

a. The first role is the non-immigrant alien. He or she wants to illegally immigrate to the United States or stay in the United States by fraudulent adjustment of his/her immigration status. The alien needs to find a sham petitioner willing to marry the alien, either through his or her own accord, or through the assistance of a facilitator.

b. The second role is the facilitator. The facilitator is the leader of the conspiracy. He or she plans, organizes, and profits the most from the success of the illegal scheme. The facilitators provide assistance in the country of origin, transit countries, and in the United States. Some examples of services provided and profited by facilitators are employers, landlords, persons acting as legal counsel, public notaries, money remitters, translators, tax preparers, and money launderers.

c. The third role is the support. The most common example under the support role is a United States citizen who is recruited to act as a sham spouse for the alien. The sham spouse is paid money, usually in increments, for following through with each step of the adjudication process described above. Another example of support is a person who provides an Affidavit of Financial Support [Form I-864]. In some instances, the support role may be conducted by an unwitting citizen.

12. The defendant, EBENEZER YEBOAH ASANE a/k/a "Ben", was born in

Ghana, and is a Naturalized United States citizen.

13. The defendant, SAMUEL SIMON SRAHA, was a foreign born national,

currently residing in Boston, Massachusetts.

14. The defendant, JAMES ERNEST EKOW ARTHUR, was a foreign born

national, currently residing in El Paso, Texas.

15. The defendant, ERNEST ATTA GYASI, was born in Ghana, and is a

Naturalized United States citizen, currently residing in Brooklyn, New York.

16.     Undercover Officer 1 and Undercover Officer 2 are United States Citizens.

## COUNT ONE

Paragraphs 1-16 of the General Allegations section above are incorporated and re-alleged herein by reference.

Beginning in or around April of 2019 and continuing through on or about the date of this Indictment, in the Eastern District of North Carolina and elsewhere, the defendants, EBENEZER YEBOAH ASANE, a/k/a "Ben", SAMUEL SIMON SRAHA, JAMES ERNEST EKOW ARTHUR, and ERNEST ATTA GYASI did knowingly and willfully combine, conspire, confederate, and agree with other persons known and unknown to the Grand Jury to commit certain offenses against the United States, that is, to knowingly enter into a marriage for the purpose of evading provisions of the immigration laws, namely Title 8, United States Code, Sections 1154 and 1186a, which provisions restrict the availability of lawful permanent resident status, applied for on the basis of marriage to a United States citizen to those foreign-born nationals who have entered into the marriage in good faith, not in exchange for something of value, and not for the purpose of procuring the foreign-born national's admission as an immigrant, in violation of Title 8, United States Code, Section 1325(c).

## PURPOSE OF THE CONSPIRACY

It was the purpose of the conspiracy for the defendants, EBENEZER YEBOAH ASANE, a/k/a "Ben", SAMUEL SIMON SRAHA, JAMES ERNEST EKOW ARTHUR, and ERNEST ATTA GYASI, along with others known and unknown to the Grand

5

Jury, to induce United States citizens to enter into sham marriages with foreign-born nationals for the purpose of evading United States immigration laws and obtaining lawful permanent residence status for otherwise inadmissible foreign-born nationals.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants, EBENEZER YEBOAH ASANE, a/k/a "Ben", SAMUEL SIMON SRAHA, JAMES ERNEST EKOW ARTHUR, and ERNEST ATTA GYASI, and their co-conspirators, sought to accomplish the purpose of the conspiracy included, among other things, the following:

Defendant, EBENEZER YEBOAH ASANE, a/k/a "Ben" induced Undercover Officer 1 ("UC1"), a member of the United States military, to enter into a fraudulent marriage with a foreign born national. The purpose of the marriage was to fraudulently qualify SRAHA, for immigration benefits, including lawful permanent resident status in the United States.

It was further part of the conspiracy that the defendants, ASANE and SRAHA, would prepare and submit immigration applications and supporting documentation on behalf of SRAHA and UC1 to the USCIS knowing the marriage was fraudulent and entered into to evade provisions of the immigration laws.

It was further part of the conspiracy that UC1, once married to SRAHA, would apply for and receive Basic Allowance for Housing (BAH) and Basic Allowance for Subsistence (BAS) from the United States military, benefits that UC1 would not normally be entitled to without being married.

6

It was further part of the conspiracy, that UC1 was solicited by defendant ASANE to find other United States citizens that would be amenable to engaging in sham marriages to foreign nationals for the purpose of obtaining lawful permanent resident status for the foreign national and BAH and BAS for the military member. UC1 introduced Undercover Officer 2 ("UC2") to ASANE.

Defendant, ASANE facilitated the sham marriage between UC1 and SRAHA and UC2 and ARTHUR in Cumberland County, North Carolina.

## OVERT ACTS

In furtherance of the conspiracy and in order to accomplish the purpose and object thereof, the defendants, EBENEZER YEBOAH ASANE, a/k/a "Ben", SAMUEL SIMON SRAHA, JAMES ERNEST EKOW ARTHUR, and ERNEST ATTA GYASI, and co-conspirators did commit, and cause to commit, among others, at least one of the following overt acts:

1.      On or about April 29, 2019, ASANE drove his silver Mercedes-Benz to the Dunkin Donuts Restaurant located at Fort Bragg, Cumberland County, North Carolina, to meet with UC1. At the meeting, ASANE told UC1 that he arranges marriages between soldiers and aliens, boasting that he had a one-hundred percent success rate. ASANE explained to UC1 how the immigration process would work and what UC1 was required to do. ASANE told UC1 that she would be engaging in a sham marriage to ASANE's "brother" for the purpose of getting his green card. ASANE told UC1 that she could live off post and receive BAH and BAS, in exchange for engaging in the fraudulent marriage to ASANE's "brother." ASANE told UC1 that

7

ASANE's "brother" would pay for fifty to seventy percent of the rent, utilities and furniture for her apartment. ASANE told UC1 that if she was able to be deployed overseas ASANE could "make her big money". ASANE told UC1 that all she needed was a lease from New York, and tell the military that her husband is moving to New York, and she would receive $4,000 per month in BAH plus salary, totaling eight to nine thousand dollars per month.

2.     On or about May 17, 2019, ASANE and SRAHA drove to the Cumberland County, North Carolina, courthouse in a Dodge Ram Truck.

3.     On or about May 17, 2019, UC1 and SRAHA participated in a civil marriage ceremony and got married in Cumberland County, North Carolina. The marriage ceremony was witnessed by ASANE and another individual known to the Grand Jury. SRAHA provided UC1 with an envelope containing receipts for the marriage certificate and the Magistrate's fee.

4.     On or about May 17, 2019, ASANE took photographs with his cellular telephone with posed photos of SRAHA and UC1 outside of the Cumberland County Magistrate's Office.

5.     On or about July 9, 2019, ASANE transmitted via cellular phone a "list" to UC1 that included basic questions that were asked during a marriage interview with United States Citizenship and Immigration Services.

6.     On or about July 10, 2019, ASANE drove his silver Mercedes-Benz to the Coffee Scene Coffee Shop, located in Fayetteville, NC and met with UC1 and UC2. At the meeting ASANE told UC1 and UC2 they need to discuss "important things

8

first," "money and the documentation". UC1 and UC2 asked ASANE who UC2 was marrying, his brother or cousin? ASANE told UC1 and UC2 that when he say's "brother" he means most of them are his cousins. ASANE told UC1 and UC2 that once they obtain the leases for the apartments to include the "persons" (meaning the husband) name on the lease "to cover your tracks". ASANE told UC1 and UC2 to start communicating with their sergeants to notify them they are getting married "to make it look more legit." ASANE told UC1 and UC2 that if their command asked where their husbands were from, to not say Ghana or Africa, and to say they are from Jamaica, so "it won't raise eyebrows."

ASANE asked UC1 and UC2 "how much they were looking for? ASANE agreed to pay UC1 and UC2 two thousand dollars in cash to file the paperwork, and when the aliens received their cards they would receive another two thousand dollars each, for a total of $4,000 each. ASANE told UC1 and UC2 that he has helped ten to fifteen people and "they all got their stuff."

7. On or about August 1, 2019, ASANE, ARTHUR and GYASI arrived at the Cumberland County courthouse in Fayetteville, North Carolina, driving a silver Mercedes-Benz and met with UC1 and UC2. ARTHUR and UC2 entered the court house and completed the marriage license application. ARTHUR paid the $60 processing fee.

8. On or about August 1, 2019, ASANE, ARTHUR and GYASI arrived at the Cumberland County Magistrates Office, Fayetteville, North Carolina driving the silver Mercedes-Benz. ASANE, ARTHUR, GYASI, UC1 and UC2 all entered the

9

Magistrate's Office and UC2 and ARTHUR entered into a civil marriage ceremony. GYASI signed as a witness on the Application, License, and Certificate of Marriage in front of the Magistrate.

9. On or about August 1, 2019, ASANE, ARTHUR and GYASI, drove in the silver Mercedes-Benz to El Cazador Restaurant, located in Fayetteville, North Carolina. ASANE gave UC1 and UC2 an envelope containing $4,000 in cash for the first of two payments for their respective marriages to SRAHA and ARTHUR.

10. On or about September 25, 2019, ASANE, UC1 and UC2 met at the Coffee Scene Coffee Shop, located in Fayetteville, North Carolina. ASANE provided UC1 and UC2 with envelopes that contained the original Ghana passport and birth certificate of SRAHA and the original Ghana passport and birth certificate of ARTHUR. All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

Paragraphs 1-16 of the General Allegations section above are incorporated and re-alleged herein by reference.

On or about May 17, 2019, in the Eastern District of North Carolina and elsewhere, the defendant, SAMUEL SIMON SRAHA, did knowingly and unlawfully enter into a marriage for the purpose of evading any provision of the immigration laws, namely Title 8 United States Code, Sections 1154 and 1186a, which provisions restrict the availability of lawful permanent resident status, applied for on the basis of marriage to a United States citizen to those foreign-born nationals who have entered into the marriage in good faith, not in exchange for something of value, and

10

not for the purpose of procuring the foreign-born national's admission as an immigrant, in violation of Title 8, United States Code, Section 1325(c).

## COUNT THREE

Paragraphs 1-16 of the General Allegations section above are incorporated and re-alleged herein by reference.

On or about August 1, 2019, in the Eastern District of North Carolina and elsewhere, the defendant, JAMES ERNEST EKOW ARTHUR, did knowingly and unlawfully enter into a marriage for the purpose of evading any provision of the immigration laws, namely Title 8 United States Code, Sections 1154 and 1186a, which provisions restrict the availability of lawful permanent resident status, applied for on the basis of marriage to a United States citizen to those foreign-born nationals who have entered into the marriage in good faith, not in exchange for something of value, and not for the purpose of procuring the foreign-born national's admission as an immigrant, in violation of Title 8, United States Code, Section 1325(c).

## COUNT FOUR

Paragraphs 1-16 of the General Allegations section above are incorporated and re-alleged herein by reference.

On or about August 1, 2019, in the Eastern District of North Carolina and elsewhere, the defendant, ERNEST ATTA GYASI, did aid and abet JAMES ERNEST EKOW ARTHUR, to knowingly and unlawfully enter into a marriage for the purpose of evading any provision of the immigration laws, namely Title 8 United States Code, Sections 1154 and 1186a, which provisions restrict the availability of lawful

11

permanent resident status, applied for on the basis of marriage to a United States citizen to those foreign-born nationals who have entered into the marriage in good faith, not in exchange for something of value, and not for the purpose of procuring the foreign-born national's admission as an immigrant, in violation of Title 8, United States Code, Sections 1325(c) and 2.

## COUNT FIVE

Paragraphs 1-16 of the General Allegations section above are incorporated and re-alleged herein by reference.

From in or around April of 2019, and continuing through in or around the date of this Indictment, in the Eastern District of North Carolina and elsewhere, the defendants EBENEZER YEBOAH ASANE, a/k/a "Ben," did encourage and induce aliens, namely, SAMUEL SIMON SRAHA and JAMES ERNEST EKOW ARTHUR, to come to, enter and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence in the United States was in violation of law, in violation of Title 8 United States Code, Section 1324(a)(1)(A)(iv).


[remainder of page intentionally left blank]

12

Case 5:19-cr-00423-FL *SEALED*   Document 1   Filed 10/17/19   Page 12 of 14
Case 5:20-cr-00349-FL   Document 1   Filed 06/23/20   Page 26 of 60

# FORFEITURE ALLEGATION

Each named defendant is given notice that all of the defendant's interest in all property specified herein is subject to forfeiture.

Upon conviction of one or more of the offense(s) set forth in Count(s) Three, Five or Six, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(6) –

(1) any conveyance, including any vessel, vehicle, or aircraft used in the commission of the said offense(s); and

(2) any property, real or personal, that constitutes, or is derived from or traceable to the proceeds obtained directly or indirectly from the commission of the said offense(s), or that was used to facilitate, or intended to be used to facilitate, the commission of the said offense(s).

The forfeitable property includes, but is not limited to:

(a) The gross proceeds personally obtained by defendant ASANE in an amount of at least $8,000; and

(b) 2017 Mercedes Benz, silver in color, VIN: WDDZF4JB7HA055943, North Carolina License Plate Number EBX-1614, registered in the name of Ebenezer Yeboah Asane.

If any of the above-described forfeitable property, as a result of any act or omission of a defendant --

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

13

(3)     has been placed beyond the jurisdiction of the court;

(4)     has been substantially diminished in value; or

(5)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.


A TRUE BILL

REDACTED VERSION
Pursuant to the E-Government Act and the
federal rules, the unredacted version of
this document has been filed under seal.

FOREPERSON


DATE: __10/16/19__


ROBERT J. HIGDON, JR.
United States Attorney


BY: GABRIEL J. DIAZ
Assistant United States Attorney


14

Exhibit B

FILED IN OPEN COURT
ON _4/21/2020_
Peter A. Moore, Jr., Clerk
US District Court
Eastern District of NC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CR-423-1FL
NO. 5:19-CR-423-3FL
NO. 5:19-CR-423-4FL
NO. 5:19-CR-423-5FL.

FILED IN OPEN COURT
ON _6/15/20_ STS
Peter A. Moore, Jr., Clerk
US District Court
Eastern District of NC

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| EBENEZER YEBOAH ASANE | ) |
| a/k/a "Ben" | ) |
| JAMES ERNEST EKOW ARTHUR | ) |
| ERNEST ATTA GYASI | ) |
| SAMUEL MANU AGYAPONG | ) |
| a/k/a "Sammy Tuga", "AG" | ) |

**SUPERSEDING
INDICTMENT**

## General Allegations

At all times relevant to this Indictment:

1.      The Immigration and Nationality Act (INA) governs the immigration
laws of the United States.

2. Pursuant to the INA, foreign-born nationals are not permitted to permanently reside in the United States unless they were lawful permanent residents.

3. Under the INA, a foreign-born national who is married to a United States citizen can obtain lawful permanent resident status in the United States if the marriage was entered into in good faith; and the United States citizen did not enter into the marriage in exchange for something of value, such as money; and the United States citizen did not enter into the marriage for the purpose of enabling the foreign national to obtain legal permanent resident status in the United States.

4. The United States Citizenship and Immigration Services (USCIS) is an agency of the United States Department of Homeland Security and is charged with processing applications for immigration benefits such as lawful permanent residence.

5. A foreign-born national who is seeking to become a lawful permanent resident of the United States on the basis of marriage to a United States citizen is required to complete and submit to the USCIS an Application to Register Permanent Residence or Adjust Status (Form I-485). The foreign-born national is required to sign the Form I-485 certifying, under penalty of perjury, that the information provided by the foreign-born national, including information about the foreign-born national's spouse, is true and correct and that the foreign-born national is admissible to the United States pursuant to the INA.

6. In order for a foreign-born national to obtain permanent resident status on the basis of marriage to a United States citizen, the United States citizen spouse

2

is required to file a Petition for Alien Relative (Form I-130) on behalf of the foreign-born national. In the Form I-130, the spouse is required to certify that he or she is in fact a United States citizen, to provide certain background information about the marriage (such as the location of the marital residence) and to certify that the marriage was not entered into for purposes of evading immigration laws. Additionally, certain supporting documentation is also required to be submitted contemporaneously with the Form I-130, to include, but not limited to, a copy of the marriage certificate, and Biographic Information (Form G-325).

7. Upon receipt of the Form I-485 and the Form I-130, the USCIS begins an official proceeding to determine whether to grant the petition. A Report of Medical Examination and Vaccination Record (Form I-693) and an Affidavit of Support (Form I-864) on behalf of the foreign-born national are also required to be filed with the USCIS to ensure that the foreign-born national has no communicable diseases, and will not become a public charge in the United States.

8. As part of the official proceeding, the USCIS conducts interviews with the foreign-born national and the United States citizen spouse in order to determine the validity of the claimed marriage.

9. If a foreign-born national's application is approved by the USCIS, the foreign-born national is accorded "conditional" lawful permanent resident status for a period of two years. Generally, within 90 days of the two year anniversary of the issuance of conditional lawful permanent residence, the foreign-born national and United States citizen file a Petition to Remove Conditions on Residence (Form I-751)

3

with the USCIS to remove the conditional status of the foreign-born national. The foreign-born national and the United States citizen must establish that the marriage was entered into in good faith. A marital interview is conducted at USCIS's discretion.

10. If and when the Form I-751 is approved, the conditions of the foreign-born national's residence are removed, resulting in unconditional lawful permanent residence status. This status authorizes the foreign-born national to permanently reside and lawfully work in the United States.

11. Aliens who seek to marry United States citizen soldiers for the purpose of obtaining lawful permanent residence do so because soldiers are in a unique environment which USCIS and the Department of Defense (DOD) place an emphasis on expediting the process. Further, aliens who seek an immigration benefit, such as lawful permanent residence, know soldiers receive a Basic Allowance for Housing (BAH) stipend typically in the form of $1000.00 (or higher depending on location) a month so that the soldier can live off post as opposed to living in their assigned barracks room. Married Soldiers also receive additional pay based on deployments to include Family Separation Pay. In some cases, the facilitator will encourage the soldier to claim their spouse is living in an area with a higher BAH rate such as New York City; New York City's BAH rate is nearly three times higher than Fayetteville, NC.

12. Soldiers who get married, regardless to an alien or civilian, are required to enroll their newly acquired spouses in the Defense Enrollment Eligibility

4

Reporting System (DEERS). This allows the spouse access to DOD issued Identification Cards, which allow them on any military installation, the ability to utilize military aircraft to fly (from installation to installation), access to health care at any military installation and/or civilian care provider that accepts TRICARE health insurance, and other benefits.

13.     For purposes of this conspiracy, there are three general roles that apply.

        a. The first role is the non-immigrant alien. He or she wants to illegally immigrate to the United States or stay in the United States by fraudulent adjustment of his/her immigration status. The alien needs to find a sham petitioner willing to marry the alien, either through his or her own accord, or through the assistance of a facilitator.

        b. The second role is the facilitator. The facilitator is the leader of the conspiracy. He or she plans, organizes, and profits the most from the success of the illegal scheme. The facilitators provide assistance in the country of origin, transit countries, and in the United States. Some examples of services provided and profited by facilitators are employers, landlords, persons acting as legal counsel, public notaries, money remitters, translators, tax preparers, and money launderers.

        c. The third role is the support. The most common example under the support role is a United States citizen who is recruited to act as a sham spouse for the alien. The sham spouse is paid money, usually in increments, for following through with each step of the adjudication process described above. Another example of support is a person who provides an Affidavit of Financial Support [Form I-864]. In some instances, the support role may be conducted by an unwitting citizen.

14.     The defendant, EBENEZER YEBOAH ASANE a/k/a "Ben," (hereinafter "ASANE") was born in Ghana, and is a Naturalized United States citizen.

15.     Individual S.S.S., (hereinafter "S.S.S.") was a foreign born national, formerly residing in Boston, Massachusetts.

16.     The defendant, JAMES ERNEST EKOW ARTHUR, (hereinafter "ARTHUR") was a foreign born national, currently residing in El Paso, Texas.

5

17.     The defendant, ERNEST ATTA GYASI, (hereinafter "GYASI") was born in Ghana, and is a Naturalized United States citizen, currently residing in Brooklyn, New York.

18.     The defendant, SAMUEL MANU AGYAPONG, a/k/a "Sammy Tuga", "A.G.", (hereinafter "AGYAPONG") was born in Ghana, and is a Naturalized United States citizen, was residing in Fayetteville, North Carolina, and a member of the United States military.

19.     The defendant, ███████████████████████ ███████ was a United States citizen, and a member of the United States military.

20.     The defendant, ███████████████████████ was born in Ghana, and was a nonimmigrant visitor for pleasure authorized to remain in the United States for a period not to exceed ███████████

21.     The defendant, ███████████████████████ was born in Nigeria, had an immigration status of a nonimmigrant student and resided in ███████

22.     The defendant, ███████████████████████ was born in Ghana, had the immigration status of Lawful Permanent Resident, and resided in the ███████████

23.     The defendant, ███████████████████████ (hereinafter ███████ was a United States citizen, and a member of the United States military.

6

24.    The defendant, ███████████████████████████ was a

United States citizen, and member of the United States military.

25.    The defendant, ███████████████████████████████

███████ was born in Ghana, is a citizen of the ███████████, and resided in ██████

███ ████████████ had an immigration status of a nonimmigrant visitor for

pleasure and was authorized to remain in the United States for a period not to exceed

████████

26.    Individual J.L.T. (hereinafter "J.L.T.") is a United States citizen.

27.    Individual A.M.L. (hereinafter "A.M.L.") is a United States citizen.

28.    Undercover Officer 1 and Undercover Officer 2 are United States

Citizens.

## COUNT ONE

Paragraphs 1-28 of the General Allegations section above are incorporated and
re-alleged herein by reference.

Beginning in or around April of 2019 and continuing through on or about the
date of this Indictment, in the Eastern District of North Carolina and elsewhere, the
defendants, EBENEZER YEBOAH ASANE, a/k/a "Ben," JAMES ERNEST EKOW
ARTHUR, ERNEST ATTA GYASI and individual S.S.S., did knowingly and willfully
combine, conspire, confederate, and agree with other persons known and unknown to
the Grand Jury to commit certain offenses against the United States in violation of-
Title 8, United States Code, Section 1325(c), that is, to knowingly enter into a
marriage for the purpose of evading provisions of the immigration laws.

7

## PURPOSE OF THE CONSPIRACY

It was the purpose of the conspiracy for the defendants, EBENEZER YEBOAH ASANE, a/k/a "Ben", JAMES ERNEST EKOW ARTHUR, and ERNEST ATTA GYASI, along with others known and unknown to the Grand Jury, to induce United States citizens to enter into sham marriages with foreign-born nationals for the purpose of evading United States immigration laws and obtaining lawful permanent residence status for otherwise inadmissible foreign-born nationals.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants, EBENEZER YEBOAH ASANE, a/k/a "Ben", JAMES ERNEST EKOW ARTHUR, and ERNEST ATTA GYASI, and their co-conspirators, sought to accomplish the purpose of the conspiracy included, among other things, the following:

Defendant, EBENEZER YEBOAH ASANE, a/k/a "Ben" induced Undercover Officer 1 ("UC1"), a member of the United States military, to enter into a fraudulent marriage with a foreign born national. The purpose of the marriage was to fraudulently qualify S.S.S., for immigration benefits, including lawful permanent resident status in the United States.

It was further part of the conspiracy that the defendants, ASANE and S.S.S., would prepare and submit immigration applications and supporting documentation on behalf of S.S.S. and UC1 to the USCIS knowing the marriage was fraudulent and entered into to evade provisions of the immigration laws.

It was further part of the conspiracy that UC1, once married to S.S.S., would apply for and receive Basic Allowance for Housing (BAH) and Basic Allowance for Subsistence (BAS) from the United States military, benefits that UC1 would not normally be entitled to without being married.

It was further part of the conspiracy, that UC1 was solicited by defendant ASANE to find other United States citizens that would be amenable to engaging in sham marriages to foreign nationals for the purpose of obtaining lawful permanent resident status for the foreign national and BAH and BAS for the military member. UC1 introduced Undercover Officer 2 ("UC2") to ASANE.

Defendant, ASANE facilitated the sham marriage between UC1 and S.S.S. and UC2 and ARTHUR in Cumberland County, North Carolina.

## OVERT ACTS

In furtherance of the conspiracy and in order to accomplish the purpose and object thereof, the defendants, EBENEZER YEBOAH ASANE, a/k/a "Ben," JAMES ERNEST EKOW ARTHUR, and ERNEST ATTA GYASI, and co-conspirators did commit, and cause to commit, among others, at least one of the following overt acts:

1.    On or about April 29, 2019, ASANE drove his silver Mercedes-Benz to the Dunkin Donuts Restaurant located at Fort Bragg, Cumberland County, North Carolina, to meet with UC1. At the meeting, ASANE told UC1 that he arranges marriages between soldiers and aliens, boasting that he had a one-hundred percent success rate. ASANE explained to UC1 how the immigration process would work and what UC1 was required to do. ASANE told UC1 that she would be engaging in a

9

sham marriage to ASANE's "brother" for the purpose of getting his green card. ASANE told UC1 that she could live off post and receive BAH and BAS, in exchange for engaging in the fraudulent marriage to ASANE's "brother." ASANE told UC1 that ASANE's "brother" would pay for fifty to seventy percent of the rent, utilities and furniture for her apartment. ASANE told UC1 that if she was able to be deployed overseas ASANE could "make her big money". ASANE told UC1 that all she needed was a lease from New York, and tell the military that her husband is moving to New York, and she would receive $4,000 per month in BAH plus salary, totaling eight to nine thousand dollars per month.

2.     On or about May 16, 2019, S.S.S. flew to Fayetteville, North Carolina. ASANE picked up S.S.S. from the Fayetteville airport in ASANE's silver Mercedes-Benz and drove S.S.S. back to ASANE's home.

3.     On or about May 17, 2019, ASANE and S.S.S. drove to the Cumberland County, North Carolina, courthouse in a Dodge Ram Truck.

4.     On or about May 17, 2019, UC1 and S.S.S. participated in a civil marriage ceremony and got married in Cumberland County, North Carolina. The marriage ceremony was witnessed by ASANE and another individual known to the Grand Jury. S.S.S. provided UC1 with an envelope containing receipts for the marriage certificate and the Magistrate's fee.

5.     On or about May 17, 2019, ASANE took photographs with his cellular telephone with posed photos of S.S.S. and UC1 outside of the Cumberland County Magistrate's Office.

6.      On or about July 9, 2019, ASANE transmitted via cellular phone a "list" to UC1 that included basic questions that were asked during a marriage interview with United States Citizenship and Immigration Services.

7.      On or about July 10, 2019, ASANE drove his silver Mercedes-Benz to the Coffee Scene Coffee Shop, located in Fayetteville, NC and met with UC1 and UC2. At the meeting ASANE told UC1 and UC2 they need to discuss "important things first," "money and the documentation." UC1 and UC2 asked ASANE who UC2 was marrying, his brother or cousin? ASANE told UC1 and UC2 that when he say's "brother" he means most of them are his cousins. ASANE told UC1 and UC2 that once they obtain the leases for the apartments to include the "persons" (meaning the husband) name on the lease "to cover your tracks." ASANE told UC1 and UC2 to start communicating with their sergeants to notify them they are getting married "to make it look more legit." ASANE told UC1 and UC2 that if their command asked where their husbands were from, to not say Ghana or Africa, and to say they are from Jamaica, so "it won't raise eyebrows."

8.      ASANE asked UC1 and UC2 "how much they were looking for? ASANE agreed to pay UC1 and UC2 two thousand dollars in cash to file the paperwork, and when the aliens received their cards they would receive another two thousand dollars each, for a total of $4,000 each. ASANE told UC1 and UC2 that he has helped ten to fifteen people and "they all got their stuff."

9.      On or about August 1, 2019, ASANE, driving ARTHUR and GYASI in his silver Mercedes-Benz, arrived at the Cumberland County courthouse in

11

Fayetteville, North Carolina, and met with UC1 and UC2. ARTHUR and UC2 entered the court house and completed the marriage license application. ARTHUR paid the $60 processing fee.

10. On or about August 1, 2019, ASANE, ARTHUR and GYASI arrived at the Cumberland County Magistrates Office, Fayetteville, North Carolina driving the silver Mercedes-Benz. ASANE, ARTHUR, GYASI, UC1 and UC2 all entered the Magistrate's Office and UC2 and ARTHUR entered into a civil marriage ceremony. GYASI signed as a witness on the Application, License, and Certificate of Marriage in front of the Magistrate.

11. On or about August 1, 2019, ASANE, ARTHUR and GYASI, drove in the silver Mercedes-Benz to El Cazador Restaurant, located in Fayetteville, North Carolina. ASANE gave UC1 and UC2 an envelope containing $4,000 in cash for the first of two payments for their respective marriages to ▮▮▮▮ and ARTHUR.

12. On or about September 25, 2019, ASANE, UC1 and UC2 met at the Coffee Scene Coffee Shop, located in Fayetteville, North Carolina. ASANE provided UC1 and UC2 with envelopes that contained the original Ghana passport and birth certificate of ▮▮▮▮ and the original Ghana passport and birth certificate of ARTHUR.

All in violation of Title 18, United States Code, Section 371.

## COUNT THREE

Paragraphs 1-28 of the General Allegations section above are incorporated and re-alleged herein by reference.

12

On or about August 1, 2019, in the Eastern District of North Carolina and elsewhere, the defendant, JAMES ERNEST EKOW ARTHUR, did knowingly and unlawfully enter into a marriage for the purpose of evading any provision of the immigration laws, namely Title 8 United States Code, Sections 1154 and 1186a, which provisions restrict the availability of lawful permanent resident status, applied for on the basis of marriage to a United States citizen to those foreign-born nationals who have entered into the marriage in good faith, not in exchange for something of value, and not for the purpose of procuring the foreign-born national's admission as an immigrant, in violation of Title 8, United States Code, Section 1325(c).

## COUNT FOUR

Paragraphs 1-28 of the General Allegations section above are incorporated and re-alleged herein by reference.

On or about August 1, 2019, in the Eastern District of North Carolina and elsewhere, the defendant, ERNEST ATTA GYASI, did aid and abet James Ernest Ekow Arthur, to knowingly and unlawfully enter into a marriage for the purpose of evading any provision of the immigration laws, namely Title 8 United States Code, Sections 1154 and 1186a, which provisions restrict the availability of lawful permanent resident status, applied for on the basis of marriage to a United States citizen to those foreign-born nationals who have entered into the marriage in good faith, not in exchange for something of value, and not for the purpose of procuring the foreign-born national's admission as an immigrant, in violation of Title 8, United States Code, Sections 1325(c) and 2.

13

## COUNT FIVE

Paragraphs 1-28 of the General Allegations section above are incorporated and re-alleged herein by reference.

From in or around April of 2019, and continuing through in or around the date of this Indictment, in the Eastern District of North Carolina and elsewhere, the defendants EBENEZER YEBOAH ASANE, a/k/a "Ben," did encourage and induce aliens, namely, S.S.S. and James Ernest Ekow Arthur, to come to, enter and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence in the United States was in violation of law, in violation of Title 8 United States Code, Section 1324(a)(1)(A)(iv).

## COUNT SIX

Paragraphs 1-28 of the General Allegations section above are incorporated and re-alleged herein by reference.

On or about May 16, 2019, in the Eastern District of North Carolina and elsewhere, the defendant EBENEZER YEBOAH ASANE, a/k/a "Ben," knowing and in reckless disregard of the fact that a certain alien, S.S.S., had come to, entered and remained in the United States in violation of law, did transport and move said alien within the United States by means of transportation and otherwise in furtherance of such violation of law, in violation of Title 8 United States Code, Section 1324(a)(1)(A)(ii).

## COUNT SEVEN

Paragraphs 1-28 of the General Allegations section above are incorporated and re-alleged herein by reference.

Beginning in or around January 2015, and continuing through on or about the date of this Indictment, in the Eastern District of North Carolina and elsewhere, the defendants, EBENEZER YEBOAH ASANE, a/k/a "Ben," SAMUEL MANU AGYAPONG, a/k/a "Sammy Tuga," ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ did

knowingly and willfully combine, conspire, confederate, and agree with other persons known and unknown to the Grand Jury to commit certain offenses against the United States in violation of Title 8, United States Code, Section 1325(c), that is, to knowingly enter into a marriage for the purpose of evading provisions of the immigration laws.

## PURPOSE OF THE CONSPIRACY

It was the purpose of the conspiracy for the defendants, ASANE, AGYAPONG,

████████████████████████████████████████████████████████████

along with others known and unknown to the Grand Jury, to induce United States citizens to enter into sham marriages with foreign-born nationals for the purpose of evading United States immigration laws and obtaining lawful permanent residence status for otherwise inadmissible foreign-born nationals.

15

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants, ASANE, AGYAPONG,

███████████████████████████████████████████████████████

and their co-conspirators, sought to accomplish the purpose of the conspiracy
included, among other things, the following:

Defendants ASANE and AGYAPONG were best friends and knew each other
through the military and were both from Ghana. AGYAPONG engaged in a civil
marriage ceremony with ███████████

It was further part of the conspiracy that AGYAPONG, and ███████ would
prepare and submit immigration applications and supporting documentation on
behalf of ███████ to the USCIS knowing the marriage was fraudulent and entered
into to evade provisions of the immigration laws.

Defendant ASANE while a member of the United States military entered into
a sham marriage with Defendant ███████████ a foreign born national. The
purpose of the marriage was to fraudulently qualify ███████████ for
immigration benefits, including lawful permanent resident status in the United
States.

Defendants ASANE, and ███████ solicited and recruited ███ and
███████ (members of the United States military) to engage in sham marriages to
foreign nationals and find other soldiers that would be willing to engage in sham
marriages in exchange for Basic Allowance for Housing (BAH) to move off post and

16

United States currency. The foreign born nationals would be eligible for lawful permanent residence through the petition of a United States citizen (the soldier).

Defendant ASANE, induced ███████ a member of the United States military, to enter into a fraudulent marriage with a foreign born national. The purpose of the marriage was to fraudulently qualify ███████ for immigration benefits, including lawful permanent resident status in the United States.

It was further part of the conspiracy that ASANE, ███████████████ would prepare and submit immigration applications and supporting documentation on behalf of ███████████ to the USCIS knowing the marriage was fraudulent and entered into to evade provisions of the immigration laws.

Defendants ASANE, ███████████ induced ███████ a member of the United States military, to enter into a fraudulent marriage with a foreign born national. The purpose of the marriage was to fraudulently qualify███████ for immigration benefits, including lawful permanent resident status in the United States.

It was further part of the conspiracy that ASANE, █████████████ █████████████ would prepare and submit immigration applications and supporting documentation on behalf of █████████████ to the USCIS knowing the marriage was fraudulent and entered into to evade provisions of the immigration laws.

17

## OVERT ACTS

In furtherance of the conspiracy and in order to accomplish the purpose and object thereof, the defendants, ASANE, AGYAPONG, ████████████████ ██████████████████████████████████████████ and co-conspirators did commit, and cause to commit, among others, at least one of the following overt acts:

### SHAM MARRIAGE BETWEEN AGYAPONG AND ██████

1.     In or around January 2015, AGYAPONG and ██████ agreed to engage in the marriage and on or about January 13, 2015, AGYAPONG and ██████ engaged in a civil marriage ceremony and got married in the Bronx, New York.

2.     On or about May 1, 2015, USCIS received a Form I-130 filed by AGYAPONG on behalf of ██████ and a Form I-485 filed by ██████████████ signed the application on or about April 30, 2015, under penalty of perjury. Accompanying the Form I-485 were supporting documents to include numerous staged photographs of AGYAPONG and ██████.

3.     On or about December 21, 2015, AGYAPONG and ██████ were interviewed at the USCIS Office located in New York, New York. Both attested under oath they were married in good faith. As a result of the interview, USCIS approved the I-130 and the Form I-485. ██████ was granted conditional resident status in the United States.

4.     On or about November 7, 2017, USCIS received a Form I-751 filed by AGYAPONG and ██████ttesting they were married in good faith and requesting ██████ removal of conditions on her resident status. On January 14, 2019,

18

USCIS approved the application and ███████ was granted permanent resident status.

### SHAM MARRIAGE BETWEEN ASANE AND ███████

5. In or around March of 2017, ASANE discussed with Individual A.M.L. that he was getting married and asked A.M.L. if she would attend.

6. On March 30, 2017, A.M.L. and J.L.T. ███████ attended the sham marriage of ASANE and ███████ in Cumberland County, North Carolina. ASANE and ███████ engaged in a civil marriage ceremony and got married in Cumberland County, North Carolina. A.M.L. and J.L.T. ███████ ███████ signed the marriage license as witnesses.

7. On or about March 30, 2017, ASANE and ███████ took staged photographs of the marriage. Later that same day, ASANE, ███████ A.M.L. and J.L.T. travelled to ASANE's residence and took more staged photographs, and signed papers.

8. On or about March 30, 2017, while at the residence of ASANE, ASANE told A.M.L. that he was getting married to ███████ to help her get her citizenship, and that he could get his BAH increased because ███████ resided in ███████.

9. On July 26, 2017, ███████ was issued a United States Uniformed Services card (Identification and Privilege Card) based on the marriage and sponsorship of ASANE. As a result of being issued the card, ███████ was entitled to Tri-Care, access to the commissary, and to the base.

19

10.    On or about September 1, 2017, USCIS received a Form I-130 filed by ASANE on behalf of ████████████ and a Form I-485 filed by ████████ ████████ signed the application on or about July 26, 2017, under penalty of perjury. Accompanying the Form I-485 were supporting documents to include numerous staged photographs of ASANE and ████████████

11.    On or about November 16, 2017, ASANE and ████████████ were interviewed at the USCIS Office located in Durham, North Carolina. Both attested under oath they were married in good faith. As a result of the interview, USCIS approved the I-130 and the Form I-145. ████████████ was granted conditional resident status in the United States.

12.    On or about August 28, 2019, USCIS received a Form I-751 filed by ASANE and ████████████ attesting they were married in good faith and requesting ████████████ removal of conditions on her resident status.

## ATTEMPTED SHAM MARRIAGE

13.    Beginning in or around July 2018, and continuing to in or around December 2018, ASANE in the presence of AGYAPONG solicited S.T.H., an individual known to the Grand Jury, to marry his "cousin".

14.    ASANE told S.T.H. to "put a price on it", meaning what is it going to cost to marry my cousin? She told ASANE she wanted $3,600. ASANE agreed.

15.    Shortly thereafter, S.T.H. and AGYAPONG were travelling together on Fort Bragg as part of their duties when AGYAPONG stopped the vehicle and met with ASANE in the parking lot of a wearhouse. AGYAPONG told S.T.H. that she

20

had to go with ASANE and two other individuals unknown to the Grand Jury. AGYAPONG told S.T.H. that she was to go with ASANE today to get married to one of the individuals in ASANE's vehicle.

### SHAM MARRIAGE BETWEEN █████████████████

16.    In or around May 2018, █████████ agreed to engage in a sham marriage to █████ in exchange for approximately $2,000. █████████ received a total of $7,000 from ASANE during the marriage fraud conspiracy.

17.    On or about May 22, 2018, █████████████████ engaged in a civil marriage ceremony and got married in Cumberland County, North Carolina.

18.    On July 25, 2018, █████ was issued a United States Uniformed Services card (Identification and Privilege Card) based on the marriage and sponsorship of █████████ As a result of being issued the card, █████ was entitled to Tri-Care insurance, access to the commissary, and to the base.

19.    On or about September 5, 2018, USCIS received a Form I-130 filed by █████████ on behalf of █████ and a Form I-485 filed by █████████ signed the application on September 1, 2018, under penalty of perjury. Accompanying the Form I-485 were supporting documents to include numerous staged photographs of █████████████

20.    Sometime on or before April 10, 2019, ASANE provided a list to █████████ █████████ and coached them on how to prepare for the marital interview scheduled to be conducted by USCIS examiners.

21.     On or about April 10, 2019, ▓▓▓▓ ▓▓▓▓▓▓ were interviewed at the USCIS Office located in Durham, North Carolina. Both attested under oath they were married in good faith. As a result of the interview, USCIS approved the I-130 and the Form I-485. ▓▓▓▓ was granted conditional resident status in the United States.

### SHAM MARRIAGE BETWEEN ▓▓▓▓▓▓▓▓▓▓

22.     In or around October 2018, ▓▓▓▓▓ approached ▓▓▓ about an opportunity to make some extra money. ▓▓▓▓ asked ▓▓▓ if he would be interested in getting married to a foreign national; in exchange, ▓▓▓ could move out of the barracks and collect BAH. ▓▓▓▓▓▓▓▓ that he could not do it because, he was already engaged to someone. ▓▓▓ ▓▓▓ ▓▓▓ if he could help him recruit other soldiers to engage in the sham marriages and he would be compensated for recruiting others.

23.     In or around October, 2018, ▓▓▓▓▓▓▓ engaged in a conversation and ▓▓▓ pitched the sham marriage scenario to ▓▓▓ to see if he was interested and ▓▓▓▓ stated he would go through with the sham marriage.

24.     In or around the end of October 2018, ▓▓▓▓▓▓, ▓▓▓▓, and ASANE met at the Starbucks restaurant at the Cross Creek Mall, Fayetteville, North Carolina, and discussed the specifics of the sham marriage between ▓▓▓ and ▓▓▓.

25.     On or about October 29, 2018, ▓▓▓ and ▓▓▓ engaged in a civil marriage ceremony during the marriage at the magistrate's office between ▓▓▓

22



and ▮▮▮▮ the marriage application and license was witnessed by ▮▮▮▮ ▮▮▮▮ gave $1,200 in cash to ▮▮▮ at the Cumberland County courthouse as payment in recruiting ▮▮▮ to engage in the marriage to ▮▮▮

26. After the marriage ceremony, ASANE and ▮▮▮ instructed ▮▮▮ to go to the soldier support center and enter ▮▮▮ biographical information into the DEERS system, which would allow ▮▮▮ to obtain an Identification card, health care (Tricare) and other benefits. ASANE also, told ▮▮▮, he would have to go to USCIS and apply for ▮▮ citizenship.

27. Sometime in October 2018, ASANE paid ▮▮▮ approximately $7,000 for his participation in arranging the sham marriage between ▮▮▮ and ▮▮▮

All in violation of Title 18, United States Code, Section 371.

## COUNT EIGHT

On or about March 30, 2017, in the Eastern District of North Carolina, EBENEZER YEBOAH ASANE a/k/a "Ben" and ▮▮▮▮▮ defendants herein, did knowingly and unlawfully enter into a marriage for the purpose of evading a provision of the immigration laws of the United States, in violation of Title 8, United States Code, Section 1325(c).

## COUNT NINE

On or about July 26, 2017, in the Eastern District of North Carolina and elsewhere, EBENEZER YEBOAH ASANE a/k/a "Ben", defendant herein, did knowingly present an application required by the immigration laws of the United

States which contained a false statement with respect to a material fact, namely, ASANE falsely stated in Form I-130 that ▮▮▮▮▮ and ASANE were married in good faith, when in fact, as ASANE then knew, ASANE had knowingly and unlawfully entered into a marriage with ▮▮▮▮▮ for the purpose of evading a provision of the immigration laws, in violation of Title 18, United States Code, Section 1546(a).

## COUNT TEN

On or about July 26, 2017, in the Eastern District of North Carolina and elsewhere, EBENEZER YEBOAH ASANE a/k/a "Ben", defendant herein, did knowingly make a false statement under oath, in a case, proceeding, and matter relating to, and under, and by virtue of a law of the United States relating to the naturalization, citizenship, or registry of aliens, that is, ASANE claimed in connection with Form I-130 that he was married in good faith to ▮▮▮▮▮ a citizen of the country of Ghana, when in fact, as ASANE then knew, ASANE had knowingly and unlawfully entered into a marriage with ▮▮▮▮▮ for the purpose of evading a provision of the immigration laws of the United States, in violation of Title 18, United States Code, Section 1015(a).

## COUNT ELEVEN



24



## COUNT TWELVE



## COUNT THIRTEEN

In or around August 2019, in the Eastern District of North Carolina and elsewhere, EBENEZER YEBOAH ASANE a/k/a "Ben," and ▮▮▮▮▮ ▮▮▮▮ defendants herein, did knowingly make under oath, and as permitted under penalty of perjury under Title 28, United States Code, Section 1746, knowingly subscribe as true, a false statement in an application required by the immigration

25

laws of the United States, and did present such application, which contained a false statement with respect to a material fact, that is, ASANE and ████████████ falsely stated in Form I-751 that ASANE and ████████ were married in good faith, when in fact, as they then knew, ASANE and ████████ had knowingly and unlawfully entered into a marriage for the purpose of evading a provision of the immigration laws, in violation of Title 18, United States Code, Section 1546(a).

## COUNT FOURTEEN

From in or around March 2017, to on or about August 30, 2019, in the Eastern District of North Carolina and elsewhere, EBENEZER YEBOAH ASANE a/k/a "Ben," and ████████████ defendants herein, did knowingly make a false statement under oath, in a case, proceeding, and matter relating to, and under, and by virtue of a law of the United States relating to the naturalization, citizenship, or registry of aliens, namely, ASANE and ████████ claimed in connection with Form I-751 that they were married in good faith, when in fact, as they then knew, ASANE and ████████████ had knowingly and unlawfully entered into a marriage for the purpose of evading a provision of the immigration laws of the United States, in violation of Title 18 United States Code, Section 1015(a).

## COUNT FIFTEEN

████████████████████████████████████████

Case 5:19-cr-00423-FL Document 171 Filed 06/15/20 Page 54 of 60

███████████████████████████████████████
███████████████████████████████████████

## COUNT SIXTEEN

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

## COUNT SEVENTEEN

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

## COUNT EIGHTEEN



## COUNT NINETEEN



28

## COUNT TWENTY

## COUNT TWENTY ONE

From in or around January 2015, and continuing through in or around the date of this Indictment, in the Eastern District of North Carolina and elsewhere, the defendant EBENEZER YEBOAH ASANE, a/k/a "Ben," did encourage and induce aliens, namely,                                                                          and
                     to come to, enter and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence in the United States was in violation of law, in violation of Title 8 United States Code, Section 1324(a)(1)(A)(iv).

## COUNT TWENTY TWO

Beginning in or around January 2015 and continuing through January 2020, in the Eastern District of North Carolina and elsewhere, the defendant SAMUEL MANU AGYAPONG, a/k/a "Sammy Tuga" and "A.G.," willfully and knowingly did embezzle, steal, purloin, and convert to defendant's use money, of a value exceeding $1,000, property of the United States, in violation of Title 18, United States Code, Section 641.

29

## COUNT TWENTY THREE

On or about February 12, 2019, in the Eastern District of North Carolina, the defendant, SAMUEL MANU AGYAPONG, a/k/a "Sammy Tuga" and "A.G.," did corruptly attempt to obstruct, influence, and impede *United States v. Ebenezer Yeboah Asane*, Criminal Case 5:19-CR-423, an official proceeding, by trying to destroy his cellular phone which contained recent marriage fraud related texts, in violation of Title 18, United States Code, Section 1512(c)(2).

## COUNT TWENTY FOUR

On or about Janaury 12, 2020, in Cumberland County, in the Eastern District of North Carolina. Defendant, SAMUEL MANU AGYAPONG, a/k/a "Sammy Tuga" and "A.G.," did knowingly, attempt to corruptly persuade    , an individual known to the Grand Jury, by telling    not to divulge the true relationship between defendant and    with the intent to influence    testimony in *United States v. Ebenezer Yeboah Asane*, Criminal Case 5:19-CR-423, an official proceeding, in violation of Title 18, United States Code Section 1512(b)(1).

## COUNT TWENTY FIVE

On or about January 14, 2020, in Cumberland County, in the Eastern District of North Carolina. Defendant, SAMUEL MANU AGYAPONG, a/k/a "Samray Tuga" and "A.G.," did knowingly, attempt to corruptly persuade an individual known to the Grand Jury,    , to conceal and destroy text messages and other contents on her cellular phone, with the intent to impair the objects' availability for use in *United*

30

*States v. Ebenezer Yeboah Asane*, Criminal Case 5:19-CR-423, an official proceeding, in violation of Title 18, United States Code Section 1512(b)(2)(B).

## FORFEITURE ALLEGATION

Each named defendant is given notice that all of the defendant's interest in all property specified herein is subject to forfeiture.

Upon conviction of one or more of the offense(s) set forth in Count(s) Three, Five or Six, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(6) —

(1) any conveyance, including any vessel, vehicle, or aircraft used in the commission of the said offense(s); and

(2) any property, real or personal, that constitutes, or is derived from or traceable to the proceeds obtained directly or indirectly from the commission of the said offense(s), or that was used to facilitate, or intended to be used to facilitate, the commission of the said offense(s).

The forfeitable property includes, but is not limited to:

(a) The gross proceeds personally obtained by defendant ASANE in an amount of at least $8,000; and

(b) 2017 Mercedes Benz, silver in color, VIN: WDDZF4JB7HA055943, North Carolina License Plate Number EBX-1614, registered in the name of Ebenezer Yeboah Asane.

If any of the above-described forfeitable property, as a result of any act or omission of a defendant -

31

(1)    cannot be located upon the exercise of due diligence;

(2)    has been transferred or sold to, or deposited with, a third party;

(3)    has been placed beyond the jurisdiction of the court;

(4)    has been substantially diminished in value; or

(5)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

A TRUE BILL
REDACTED VERSION
Pursuant to the E-Government Act and the
federal rules, the unredacted version of
this document has been filed under seal.
FOREPERSON

DATE: 4/21/2020

ROBERT J. HIGDON, JR.
United States Attorney

BY: GABRIEL J. DIAZ
Assistant United States Attorney